GILBRIDE, TUSA, LAST & SPELLANE, LLC
Todd. S. Sharinn (CT 419121)
1011 High Ridge Road, Suite 305
Stamford, CT 06905
Telephone: (203) 622-9360
Facsimile:  (203) 622-9392
Email: tss@gtlslaw.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------------------x
                                         :    Civil Action No.:
CROSSFORD INTERNATIONAL, LLC             :
and GOODWAY TECHNOLOGIES                  :
CORPORATION                              :
                           Plaintiffs,   :    COMPLAINT FOR
                                         :    DECLARATORY
            v.                           :    JUDGEMNET
                                         :
KEITH HANDY DESIGN LTD., and             :    JURY TRIAL DEMANDED
KEITH DAVID HANDY                        :
                                         :
                           Defendant.    :
-------------------------------------------------------------x
```

Plaintiff Crossford International, LLC and its licensee Goodway Technologies Corporation by and through their attorneys allege as and for their Complaint against Keith Handy Design LTD. d/b/a KHD Technology, and Keith David Handy as follows:

## NATURE AND BASIS OF ACTION

1.      This is a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and the Patent Laws of the United States, 35 U.S.C. §§ 271 *et seq.* Plaintiffs seek a declaration of invalidity, unenforceability, and non-infringement of U.S. Patent Nos. 7,784,476 (the "'476 Patent"), 9,248,975 (the "'975 Patent"), 10,150,623 (the "'623 Patent"), and 10,604,354 (the "'354 Patent" and collectively with the '476 Patent, the '975 Patent,

and the '623 Patent the "Patents-in-Suit"). True and correct copies of the Patents-in-Suit are attached hereto as **Exhibits A**, **B**, **C**, & **D**, respectively.

2.      This action additionally arises out of Defendants' misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114 *et seq.*, as well as unfair trade practices pursuant to C.G.S.A. §§ 42-110b *et seq.,* breach of contract, and tortious interference with business relations under Connecticut common law.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*. (the "DTSA"), the Lanham Act, 15 U.S.C. §§ 1125 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.      This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal Jurisdiction over Defendants in that they transact business in the State of Connecticut.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) in that Defendants are a corporation and an individual, each of which is subject to personal jurisdiction in this judicial district.

## THE PARTIES

7.      Plaintiff Crossford International, LLC ("CLLC") is a limited liability company organized and existing under the laws of the State of Connecticut, having its principal place of business at 420 West Avenue, Stamford, Connecticut 06902.

8.     Plaintiff Goodway Technologies Corporation ("GTC" and collectively with CLLC as, "Crossford") is a corporation organized and existing under the laws of the State of Connecticut, having its principal place of business at 420 West Avenue, Stamford, Connecticut 06902.

9.     Defendant Keith Handy Design LTD. d/b/a KHD Technology ("KHD") is a Limited Company organized and existing under the laws of the United Kingdom having its principal place of business at Granville House, Granville Terrace, Stone, Staffordshire, ST15 8DF, United Kingdom. KHD is actively engaged in the manufacture, distribution, marketing, offer for sale and sale of goods and services, and regularly transacts business throughout the United States and within the State of Connecticut and this Judicial District.

10.    Defendant Keith David Handy ("Handy" and in combination with KHD as "Defendants") is an individual that resides in the United Kingdom and who owns, controls, and/or is employed by KHD. Handy is actively engaged with and through his employment by and exerts control over KHD in the manufacture, distribution, marketing, offer for sale and sale of goods and services, and regularly transacts business throughout the United States and within the State of Connecticut and this Judicial District.

11.    Upon information and belief, Defendant Handy is currently the exclusive owner of all rights, titles, and interests in and to the Patents-in-Suit.

## BACKGROUND FACTS

### CROSSFORD

12.    For over fifty-five (55) years Plaintiff Crossford and its related companies, subsidiaries, and licensees (hereinafter collectively referred to as "Crossford"), have been leading global manufacturers, marketers, and sellers of maintenance solutions for several industries that include food and beverage processing, cleaning, and sanitation, commercial heating, venting, air

conditioning systems, facility management and maintenance, power generation, and various maritime industrial applications.

13.     Crossford has and continues to invest substantial time and resources in connection with its research, development, manufacture, distribution, marketing, offering for sale and sale of novel, useful and commercially valuable products directed at serving many industries including, but not limited to food and beverage processing, cleaning, and sanitation, facility maintenance, HVAC, maritime and offshore platforms, and power plant maintenance.

14.     Crossford's diverse food and beverage processing, cleaning, and sanitation product lines have and continue to service, among others, commercial bakeries, snack producers, produce processing facilities, pet food producers, fast food suppliers and establishments, confectionaries, and breweries.

15.      With over fifty-five (55) years of providing the industry's most innovative maintenance and sanitation equipment and solutions for cleaning food production plants, bakeries, and processing facilities, Crossford's focus begins with responding to customers' cleaning and sanitation needs by developing the right approach and always attempting to exceed their needs and expectations, through working on-site, in many cases, with crucial sanitation and plant maintenance decision-makers to establish the correct and most effective and efficient method.

16.     Crossford specializes in dry steam cleaning products for packaging machinery, production lines, and conveyor belts that help remove soils, grease, overspray, allergens, and more while preparing surfaces for more efficient sanitizing.

17.     Crossford's innovative maintenance and sanitation equipment and solutions for cleaning food production plants, bakeries, and processing facilities additionally offer and integrate

Crossford's BIOSPRAY® branded surface sanitizer systems and solutions, which in certain applications increase sanitation performance while reducing labor and chemical usage. The BIOSPRAY® patented technology atomizes alcohol sanitizers safely, allowing it to penetrate surface cracks and quickly kill pathogens.

18.     Crossford has always invested substantial time and resources, in connection with its operation, maintenance, and growth of its business, with developing, securing and protecting its valuable intellectual property rights in and to its novel, useful and commercially valuable products, product lines and their associated packaging (the "Crossford IP").

19.     The Crossford IP includes, but is not limited to certain inventions, improvements, patented and non-patented ideas, copyrightable and non-copyrightable original works, trademarks, service marks, tradenames, and the Crossford Confidential Information (as hereinafter defined) relating to Crossford and Crossford's conception, development, manufacture, distribution, marketing, offering for sale and sale of highly specialized systems and apparatus directed to, among other applications, food and beverage processing, cleaning, and sanitation, most notably for present purposes the cleaning of automated production lines.

20.     The Crossford Confidential Information includes, but is not limited to trade secrets, confidential and proprietary information and know-how, sales and pricing information, customer lists, customer numbers, customer issues, feedback, and special needs or requests, business and marketing plans, studies, and projections, client surveys, and various engineering advancements, improvements, and ideas.

21.     Crossford has and continues to take great measures to prevent its competitors and others from obtaining the Crossford Confidential Information.

**DEFENDANTS**

22.     Defendant KHD claims, *inter alia*, that "KHD specializes in the design and manufacture of products for steam cleaning conveyor belts and other applications for the food industry." *See* **Exhibit E**.

23.     KHD further contends that it's "range of cleaning systems for conveyor belts is world-leading, and [it] offer[s] multiple systems for various tasks and facilities." *See id.*

24.     KHD's products are distributed, marketed, offered for sale and sold throughout the United States, including in the State of Connecticut and this Judicial District.

25.     Upon information and belief, at all times relevant, Handy has maintained exclusive control of KHD, as well as any and all business conducted by or on behalf of KHD.

26.     KHD, through Handy, has and continues to contend that the KHD conveyor belt cleaning systems are protected by and the subject of the claims set forth in the Patents-in-Suit.

**THE '476 PATENT**

27.     The '476 Patent was issued on August 31, 2010, from U.S. Patent Application No. 10/598,426, which claims priority of March 12, 2014, based on United Kingdom Application No. 0405571.1.

28.     During prosecution of the '476 Patent, the United States Patent and Trademark Office (the "USPTO") Examiner issued two rejections, one being a final rejection, under 35 U.S.C. § 102 for anticipation in view of German Patent No EP 0 820 965 A1 ("Bruhin"). A true and accurate copy of Bruhin is attached here to as **Exhibit F**.

29.     In the USPTO Examiner's Notice of Allowance of the '476 Patent, the Examiner held that:

"Bruhin discloses an assembly for cleaning a conveyor belt, the assembly having an elongate reciprocal movement providing means with elongate body and carriage member, a cleaning member, and engagement members which are adjustably engageable on a conveyor. However, Bruhin fails to teach or reasonably suggest the claimed apparatus comprising, *inter alia*, the engagement members engageable from above the item to be cleaned such that the elongate body is positioned above the item to be cleaned and the carriage member being adjustably moveable along the elongate body between the engagement members, and the proportion of the elongate body along which the carriage moves being adjustable."

*See* **Exhibit G**.

30.    The USPTO Examiner erred in issuing the patent because: (1) Bruhin, contrary to the Examiner's erroneous conclusion, does in fact disclose and show "engagement members (suction cups 16) engageable from above the item to be cleaned such that the elongate body (holding mechanism 13) is positioned above the item to be cleaned (10) ..." (*see* **Exhibit F** FIGS. 2 and 3); and (2) Bruhin in fact also discloses and shows "the carriage member being adjustably moveable along the elongate body between the engagement members, and the proportion of the elongate body along which the carriage moves being adjustable." (*See* **Exhibit F** FIGS. 2 and 3, and column 3 lines 17-28:

"[a]s is visible in figures 2 and 3, the holding mechanism 13 is outfitted with a suction cup 16 from the longitudinal profile 14, and which both ends have a bracket 15. The bracket 15 is adjustable and mountable parallel to the longitudinal profile 14 whereby the holding mechanism can be displaced between the two wall-

forming parts 17 which form a side limit of the escalator or conveyor belt. In doing so, the longitudinal profile is displaced parallel to the surface to be cleaned 10 of the escalator or conveyor belt.").

31.     The USPTO Examiner thus erred in her allowance of the '476 Patent since the '476 Patent was anticipated by Bruhin.

32.     Further, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose information material to patentability, namely failing to include Evan Reyes ("Reyes"), GTC's Director of Sales who worked directly with Handy and KHD as described in further detail below, as an inventor constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

33.     Additionally, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose certain well-known prior art that would establish a *prima facie* case of unpatentability of the '476 Patent constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

34.     Still further, during the prosecution of the '476 Patent the USPTO failed to consider all prior art that relates to and obviates any claim in and to the '476 Patent. Specifically, in connection with preparing the present declaration of invalidity and unenforceability Crossford conducted additional prior art searches that present still further references demonstrating Defendants' failure to meet their disclosure requirements and the USPTO's failure to prosecute the underlying application properly and fully. *See* **Exhibit H**.

35.     For the foregoing reasons, the '476 Patent is invalid and unenforceable, as such the '476 Patent cannot be infringed.

**THE '975 PATENT**

36.     The '975 Patent was issued on February 2, 2016, from U.S. Patent Application No. 14/440,222, which claims priority of November 12, 2012, based on United Kingdom Patent Application No. 1220334.5.

37.     During prosecution of the '975 Patent the USPTO failed to consider all prior art that relates to and obviates any claim in and to the '975 Patent. Specifically, in connection with preparing the present declaration of invalidity and unenforceability Crossford conducted additional prior art searches that present still further references demonstrating Defendants' failure to meet their disclosure requirements and the USPTO's failure to prosecute the underlying application properly and fully. *See* **Exhibit H**.

38.     Further, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose information material to patentability, namely failing to include Reyes as an inventor constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

39.     Additionally, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose certain well-known prior art that would establish a *prima facie* case of unpatentability of the '975 Patent constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

40.     For the foregoing reasons, the '975 Patent is invalid and unenforceable, as such the '975 Patent cannot be infringed.

**THE '623 PATENT**

41.     The '623 Patent was issued on December 11, 2018, from U.S. Patent Application No. 15/623,216, which claims priority of June 16, 2016, based on United Kingdom Patent Application No. 16010480.4.

42.     During prosecution of the '623 Patent the USPTO failed to consider all prior art that relates to and obviates any claim in and to the '623 Patent. Specifically, in connection with preparing the present declaration of invalidity and unenforceability Crossford conducted additional prior art searches that present still further references demonstrating Defendants' failure to meet their disclosure requirements and the USPTO's failure to prosecute the underlying application properly and fully. *See* **Exhibit H**.

43.     Further, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose information material to patentability, namely failing to include Reyes as an inventor constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

44.     Additionally, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose certain well-known prior art that would establish a *prima facie* case of unpatentability of the '623 Patent constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

45.     For the foregoing reasons the '623 Patent is invalid and unenforceable, as such the '623 Patent cannot be infringed.

**THE '354 PATENT**

46.     The '354 Patent was issued on March 31, 2020, from U.S. Patent Application No. 16/131,411, which claims priority of September 15, 2017, based on United Kingdom Patent Application No. 1714871.9.

47.     During prosecution of the '354 Patent the USPTO failed to consider all prior that relates to and obviates any claim in and to the '354 Patent. Specifically, in connection with preparing the present declaration of invalidity and unenforceability Crossford conducted

additional prior art searches that present still further references demonstrating Defendants' failure to meet their disclosure requirements and the USPTO's failure to prosecute the underlying application properly and fully. *See* **Exhibit H**.

48.　Further, during prosecution of the '354 Patent, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose information material to patentability, namely failing to include Reyes as an inventor of the '354 Patent constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

49.　Additionally, Defendant Handy failed to comply with 37 C.F.R. 1.56 by failing to disclose certain well-known prior art that would establish a *prima facie* case of unpatentability of the '354 Patent constituting fraud, inequitable conduct, and a violation of Handy's duty of disclosure, candor, and good faith.

50.　Still further, the specification of the '354 Patent is deficient in that the Specification's written description of the invention does not describe with sufficient specificity, in such a full clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention, failing to comply with 35 U.S.C. 112.

51.　Specifically, the Specification of the '354 Patent is deficient because there is insufficient disclosure regarding the conversion of how input for debris level, figure for debris level, speed of movement of the conveyor belt, and cycle time are used to calculate a cleaning program and the optimum speed of the belt so that any person skilled in the art could make and use the invention as required by 35 U.S.C. 112.

52.　For the foregoing reasons the '354 Patent is invalid and unenforceable, as such the '354 Patent cannot be infringed

**DEFENDANTS' BUSINESS RELATIONSHIP WITH CROSSFORD**

53.     Until very recently, the parties maintained a very friendly and professional business relationship since at least as early as April 14, 2015.

54.     On April 14, 2015, GTC and KHD entered into a Memorandum of Understanding (the "Memorandum") outlining in detail the parameters of the agreement for GTC to sell KHD products into North, Central, and South America. *See* **Exhibit I**.

55.     Under the Memorandum, "KHD will treat GTC as its sole distributor in the countries actively supported by Goodway." *See id.*

56.     Further, under the Memorandum, "[a]ll KHD products will be co-branded, the specific details for each product done by agreement." *See id.*

57.     Still further, under the Memorandum, in the event "KHD receives enquires from end-user companies located in the region... KHD will pass those enquiries to Goodway." *See id.*

58.     The arrangement under the Memorandum was to last "for a period of 36 months with an Evergreen clause to automatically renew for each 12 month period thereafter for a total of six consecutive years." *See id.*

59.     Moreover, and pursuant to the terms agreed to by the parties in the Memorandum, on April 14, 2015, GTC and KHD signed a Mutual Confidentiality Agreement (the "Confidentiality Agreement"). *See* **Exhibit J**.

60.     Under the Confidentiality Agreement, in consideration of receiving certain Crossford Confidential Information, KHD agreed not to "seek to obtain any protection of the intellectual property contained in the Confidential Information" without first receiving Crossford's prior written consent. *See Id.*

61.     The bounds of the parties' business relationship were respected at all times and continue to be respected by Crossford.

62.   There was never any confusion on Crossford's part.

63.   Nor was there any impression of confusion presented to Crossford by Defendants as to what each parties' respective rights and obligations were.

64.   As set forth in the Memorandum, GTC would sell KHD products into North, Central, and South America as KHD's sole distributor in those regions and further that GTC and its distributors would treat KHD as their sole supplier and not sell products that compete with KHD's product range. *See* **Exhibit I**.

65.   Indeed, by way of example only, when Crossford was contacted by Bimbo Iberia Corporativa SL ("Bimbo Iberia"), a food and beverage company located in Barcelona, Spain, Crossford immediately referred Bimbo Iberia to KHD in accordance with the Memorandum as Bimbo Iberia is located outside of GTC's region as set forth in the Memorandum.

66.   As will be explained in greater detail below, KHD failed to observe and abide by the geographic constraints the parties each agreed to. Moreover, KHD went as far as to identify GTC as it subsidiary and to instruct entities located in GTC's regions to work directly with KHD in violation of the terms and conditions jointly established by the parties and memorialized by the Memorandum.

67.   Defendants' actions were without authorization or license and enabled KHD to compete unfairly with GTC all to KHD's benefit and GTC's detriment.

**DEFENDANTS COLLABORATION WITH CROSSFORD**

68.   Defendants, and most notably Handy, collaborated with Crossford in efforts to improve Defendants' products, their respective customers' experiences, and with expanding Defendants' overall sales of its products through increasing the customer base for KHD's steam cleaning products.

69.     As part of the parties' collaborative efforts, Defendants, and most notably Handy, had weekly conversations with, among other Crossford employees, Reyes wherein they would discuss, among other things, certain Crossford Confidential Information including, the products and issues raised by their use in the field as well as, sales numbers, customer issues, and customer feedback, engineering advancements, improvements, and ideas.

70.     During these weekly conversations Reyes worked with Handy to improve upon the KHD systems, namely the KHD conveyor belt cleaning systems purportedly claimed by and through the Patents-in-Suit, to create a better product and customer experience.

71.     For instance, in or around June 2015, Reyes proposed the idea to Handy to incorporate a rotary head on KHD's jet system, an improvement that Reyes recommended after discovering Amerivap Systems Inc.'s product. *See* **Exhibit K**.

72.     Over the following months, Reyes and Handy collaborated to create and implement the rotary head which ultimately became the basis of the '623 Patent.

73.     Notwithstanding Reyes' contributions and efforts in conceptualizing and reducing the rotary head to practice, Handy failed to disclose Reyes as an inventor during the prosecution of the '623 Patent in violation of 37 C.F.R. 1.56.

74.     Further, Handy failed to disclose the Amerivap Systems Inc.'s product as prior art during the prosecution of the '623 Patent despite having full knowledge of the same and in complete disregard for the requirements of 37 C.F.R. 1.56.

75.     Additionally, in or around April 2016, Reyes' recommended an improvement to KHD's conveyor belt cleaner systems, namely to implement user defined variable to treat the conveyor belts in sequential patterns in order to more efficiently and effectively clean the entire conveyor belt. *See* **Exhibit L**.

76.     Over the following months Reyes and Handy collaborated to create and implement Reyes' suggested improvements, which ultimately became the basis of the '354 Patent.

77.     Once more, notwithstanding Reyes' contributions and efforts in conceptualizing and reducing the rotary head of the '354 Patent to practice, Handy failed to disclose Reyes as an inventor during the prosecution of the '354 Patent in violation of 37 C.F.R. 1.56.

## DEFENDANTS' BREACH OF THE MEMORANDUM AND THE CONFIDENTIALITY AGREEMENT

78.     Since long before April 2021, Defendants breached the Memorandum, without Crossford's knowledge or authorization. Most recently and by way of example only, Defendants, through sales statements known to be made by Handy, positioned themselves as the main point of contact with Grupo Bimbo, S.A.B. de C.V. ("Bimbo Mexico"), a Mexican company located within GTC's region as established and set forth in the Memorandum.

79.     Defendant Handy had promised to include Crossford's Manager, Timothy Kane ("Kane"), on a presentation call with Bimbo Mexico (the "Presentation") to discuss potential business opportunities in the North American Market.

80.     However, Defendant Handy failed to include Kane in the Presentation, intentionally sending out the invite for the Presentation to Kane **after** it had already been concluded. *See* **Exhibit M**.

81.     Adding insult to injury, during the Presentation to Bimbo Mexico, Defendants falsely represented KHD's relationship with Crossford, which misled Bimbo Mexico to believe that KHD is a parent company of GTC. *See* **Exhibit N**.

82.     Still further, during the Presentation to Bimbo Mexico, Defendants introduced a pricing list that undercut Crossford's pricing, causing Bimbo Mexico to cease all communications with Crossford and work exclusively with Defendants. *See Id.*

83.     As a result of Defendants' conduct and the Presentation to Bimbo Mexico, an employee of Bimbo Mexico contacted Bimbo Bakeries USA, a long-time customer of GTC, and urged Bimbo Bakeries USA to work with KHD directly, as Bimbo Mexico was under the false impression that KHD was the parent company of GTC and had better prices.

84.     Defendants' aforesaid interference has resulted in breach of the Memorandum as well as intentional interference with business relationships and prevented the formation of a prospective business relationship between Crossford and Bimbo Mexico.

## DEFENDANTS' THREATS OF PATENT LITIGATION

85.     Throughout the business relationship, Defendants persistently cautioned Crossford that no one in the food and beverage processing, cleaning, and sanitation industry, including Crossford, would be able to provide similar systems as KHD since KHD's intellectual property (namely the Patents-in-Suit), covered in KHD's estimation any and all iterations, improvements and possible advancements of the relevant technology.

86.     By way of example only, on or around September 5, 2019, Defendants dispatched a cease and desist letter to a competitor, Steamericas, Inc. ("Stemericas"), alleging that certain Stemericas' products infringed on Defendants' '476 Patent. *See* **Exhibit O**.

87.     Defendants regularly indicated directly and indirectly, through telephone conversations and otherwise, that if Crossford tried to create its own competing systems, those products would fall within the scope of KHD's broad-based interpretation of the claims of the Patents-in-Suit, and thereafter followed up with cautionary statements that threatened that any such undertaking by Crossford would likely lead to patent litigation between the parties.

88.      Upon information and belief, Defendants will unabashedly continue to threaten Crossford for patent infringement.

89.     Crossford has suffered and continues to suffer substantial damages and irreparable harm as a result of Defendants' unlawful actions.

**COUNT ONE**
**(DECLRATORY JUDGMENT OF INVALIDITY OF PATENTS-IN-SUIT)**

90.     Crossford repeats and realleges the allegations of Paragraph 1 through 89 as if fully set forth herein.

91.     There is an actual, substantial, and continuing case or controversy between Crossford and Defendants concerning whether the Patents-in-Suit are valid under, *inter alia*, 35 U.S.C. §§101, 102, 103, or 112, or in view of Defendants' failure to comply with 37 C.F.R. 1.56.

92.     All of the claims of the Patents-in-Suit are invalid because they fail to meet the conditions of patentability or otherwise comply with one or more of the statutory requirements in 35 U.S.C. § 100 *et seq.*, including without limitation, 35 U.S.C. §101, 102, 103, and 112. Crossford has been injured and damaged by Defendants' allegations that Crossford has infringed the Patents-in-Suit.

93.     Crossford is entitled to a declaratory judgment that the Patents-in-Suit are invalid. Without a declaration that the Patents-in-Suit are invalid, Defendants will continue to wrongly assert patent infringement claims against Crossford, thereby causing irreparable injury and damage.

**COUNT TWO**
**(DECLARATION OF NON-INFRINGEMENT OF PATENTS-IN-SUIT)**

94.     Crossford repeats and realleges the allegations of paragraphs 1 through 93 as if fully set forth herein.

95.     There is an actual, substantial, and continuing case or controversy between Crossford and Defendants concerning whether the Crossford IP infringes any valid or enforceable claim of the Patents-in-Suit.

96.     For among other reasons, Crossford did not and could not infringe on the Patents-in-Suit because they are all invalid and thus unenforceable.

97.     Crossford has never infringed any of the Patents-in-Suit.

98.     Crossford has not induced or contributed to any infringement of any of the claims of the Patents-in-Suit.

99.     Crossford has been injured and damaged by Defendants' allegations of infringement.

100.    Crossford is entitled to a declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any of the allegedly enforceable rights owned by Defendants relating to the Patents-in-Suit.

101.    Without a declaration of non-infringement, Defendants will wrongfully continue to assert patent infringement claims against Crossford, thereby causing Crossford irreparable injury and damage.

## COUNT THREE
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DTSA

102.    Crossford repeats and realleges the allegations of paragraphs 1 through 101 as if fully set forth herein.

103.    Crossford owns valuable trade secrets and takes great measures to prevent its competitors and others from obtaining its trade secrets.

104. Crossford provided information to Defendants during the course of their business relationship pursuant to the terms of the Memorandum and Confidentiality Agreement that are trade secrets as defined by DTSA.

105. Specifically, Defendant Handy was given certain Crossford Confidential Information, which includes, among other things, proprietary and trade secret information such as, the products and issues raised by their use in the field as well as, sales numbers, customer issues, and customer feedback, engineering advancements, improvements, and ideas.

106. Defendants gained access to and learned Crossford's trade secrets in confidence and were under contractual obligations and legal duties not to use or disclose the Crossford Confidential Information without Crossford's authorization or consent.

107. Defendants misappropriated the Crossford Confidential Information by using and disclosing such confidential information without Crossford's consent or authorization to obtain the Patents-in-Suit.

108. Defendants' misappropriation has allowed Defendants to unfairly benefit by using the Crossford Confidential Information to secure the Patents-in-Suit to Crossford's damage and injury.

109. Defendants' conduct constitutes a violation of the DTSA.

110. As a proximate consequence of Defendants' illegal and illicit conduct, Crossford has suffered and will continue to suffer severe and irreparable damages, including monetary damages and other harm for which Crossford does not have an adequate remedy at law.

111. The aforementioned acts of Defendants in wrongfully misappropriating and continuing to misappropriate and use the valuable Crossford Confidential Information, were and continue to be willful and malicious, warranting an award of exemplary damages, as provided for

by the DTSA and an award of reasonable attorney's fees and costs of this action, also provided by the DTSA.

## COUNT FOUR
## UNFAIR COMPETITION UNDER THE LANHAM ACT

112.    Crossford repeats and realleges the allegations of paragraphs 1 through 111 as if fully set forth herein.

113.    KHD failed to observe and abide by the geographic constraints the parties each agreed to. Moreover, KHD went as far as to identify GTC as it subsidiary and to instruct entities located in GTC's regions to work directly with KHD in violation of the terms and conditions jointly established by the parties and memorialized by the Memorandum.

114.    Specifically, during the Presentation to Bimbo Mexico, Defendants falsely represented KHD's relationship with Crossford, which misled Bimbo Mexico to believe that KHD is a parent company of GTC.

115.    Still further, during the Presentation to Bimbo Mexico, Defendants introduced a pricing list which undercut Crossford's pricing, causing Bimbo Mexico to cease all communications with Crossford and work exclusively with Defendants.

116.    As a result of Defendants' conduct and the Presentation to Bimbo Mexico, an employee of Bimbo Mexico contacted Bimbo Bakeries USA, a long-time customer of GTC, and urged Bimbo Bakeries USA to work with KHD directly, as Bimbo Mexico was under the false impression that KHD was the parent company of GTC and had better prices.

117.    Defendants' actions were without authorization or license and enabled KHD to compete unfairly with GTC all to KHD's benefit and GTC's detriment.

118.    Crossford has no adequate remedy at law, and if Defendants' conduct is not immediately enjoined.

## COUNT FIVE
## UNFAIR TRADE PRACTICES UNDER CONNECTICUT LAW

119.    Crossford repeats and realleges the allegations of paragraphs 1 through 118 as if fully set forth herein.

120.    Defendants, without Crossford's authorization or consent, and having knowledge of Crossford's well-known and prior rights in and to the Crossford Confidential Information have used and unfairly benefited from the Crossford Confidential Information to among other things, obtain the Patents-in-Suit.

121.    Defendants are now using the Patents-in-Suit to unfairly compete against Crossford.

122.    Moreover, KHD failed to observe and abide by the geographic constraints the parties each agreed to. KHD went as far as to identify GTC as it subsidiary and to instruct entities located in GTC's regions to work directly with KHD in violation of the terms and conditions jointly established by the parties and memorialized by the Memorandum.

123.    Specifically, during the Presentation to Bimbo Mexico, Defendants falsely represented KHD's relationship with Crossford, which misled Bimbo Mexico to believe that KHD is a parent company of GTC.

124.    Still further, during the Presentation to Bimbo Mexico, Defendants introduced a pricing list which undercut Crossford's pricing, causing Bimbo Mexico to cease all communications with Crossford and work exclusively with Defendants.

125.    As a result of Defendants' conduct and the Presentation to Bimbo Mexico, an employee of Bimbo Mexico contacted Bimbo Bakeries USA, a long-time customer of GTC, and urged Bimbo Bakeries USA to work with KHD directly, as Bimbo Mexico was under the false impression that KHD was the parent company of GTC and had better prices.

126.    Defendants' actions were without authorization or license and enabled KHD to compete unfairly with GTC all to KHD's benefit and GTC's detriment.

127.    Defendants' use of the Crossford Confidential Information and Defendants' misrepresentations of the relationship between GTC and KHD is likely to and is causing confusion, mistake, and deception among the general purchasing public and is likely to and has deceived Crossford customers and potential customers into believing that GTC is a subsidiary of KHD.

128.    The aforesaid acts of Defendants constitute unfair methods of competition and unscrupulous business tactics that are likely to, and have caused injury to Crossford, Crossford's business reputation, and the Crossford Confidential Information, as well as the valuable goodwill associated therewith and attached thereto at no cost to Defendants and in violation of Connecticut's Unfair Trade Practices Act, Connecticut General Stat. Annotated § 42-110b, *et seq.*

129.    Crossford has no adequate remedy at law and if Defendants' activities are not enjoined, Crossford will continue to suffer irreparable harm and injury to its goodwill and business reputation.

## COUNT SIX
## BREACH OF CONTRACT

130.    Crossford repeats and realleges the allegations of paragraphs 1 through 129 as if fully set forth herein.

131.    On April 14, 2015, Defendants entered into valid and enforceable contracts with GTC, by and through the Memorandum and Confidentiality Agreement.

132.    By the terms of the Memorandum, KHD was required to "treat GTC as its sole distributor in the countries actively supported by Goodway."

133.    Further, under the Memorandum, in the event "KHD receives enquires from end-user companies located in the region... KHD will pass those enquiries to Goodway."

134.    The arrangement under the Memorandum was to last "for a period of 36 months with an Evergreen clause to automatically renew for each 12 month period thereafter for a total of six consecutive years."

135.    Under the Confidentiality Agreement, in consideration of receiving certain Crossford Confidential Information, KHD agreed not to "seek to obtain any protection of the intellectual property contained in the Confidential Information" without receiving Crossford's prior written consent.

136.    Crossford has at all times been in material compliance with the terms and conditions of Memorandum and Confidentiality Agreement.

137.    By the acts of Defendants described herein, Defendants breached the Memorandum by, among other things, positioning themselves as the main point of contact with Bimbo Mexico, a Mexican company located within GTC's region as set forth in the Memorandum.

138.    Further, during the Presentation to Bimbo Mexico, Defendants falsely represented KHD's relationship with Crossford, which misled Bimbo Mexico to believe that KHD is a parent company of GTC.

139.    By the acts of Defendants described herein, Defendants further breached the Memorandum by failing to pass Bimbo Mexico's inquiry to GTC as required under the Memorandum.

140.    Still further, by the acts of Defendants described herein, Defendants breached the Confidentiality Agreement by, among other things, using the Crossford Confidential Information

to seek and obtain protection of the intellectual property contained in the Crossford Confidential Information, namely seeking and obtaining the Patents-in-Suit.

141.    Upon information and belief, Defendants' acts have made and will continue to make substantial profits and gains to which they are not entitled to in law or equity, at the detriment of Crossford.

142.    Defendants intend to continue their conduct unless restrained by this Court.

143.    As a direct and proximate result of Defendants' breaches, Crossford has and will continue to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT SEVEN
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

144.    Crossford repeats and realleges the allegations of paragraphs 1 through 143 as if fully set forth herein.

145.    Through their prior dealings business relationship, Defendants knew of Crossford's business relationships with Bimbo Mexico and Bimbo Bakeries USA and willfully, illegally, and illicitly exploited the same all to the detriment of Crossford.

146.    Defendants have intentionally, maliciously, and without justification acted to deprive Crossford of its existing business relationship with Bimbo Bakeries USA and the potential business relationship with Bimbo Mexico by falsely misleading them to believe that KHD is in some way a parent corporation of Crossford and breaching the Memorandum.

147.    Defendants' interference was wrongful and tortious.

148.    As a result of the tortious interference by Defendants, Crossford has suffered and will continue to suffer severe and irreparable damages. Crossford has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Crossford respectfully requests judgment against Defendants KHD and Handy on all counts and the following relief:

A.      that Defendants' U.S. Patent No. 7,748,476 be declared invalid and unenforceable; and

B.      that Defendants' U.S. Patent No. 9,248,975 be declared invalid and unenforceable; and

C.      that Defendants' U.S. Patent No. 10,150,623 be declared invalid and unenforceable; and

D.      that Defendants' U.S. Patent No. 10,604,354 be declared invalid and unenforceable; and

E.      that Defendants' U.S. Patent No. 7,748,476 be declared not infringed by Crossford; and

F.      that Defendants' U.S. Patent No. 9,248,975 be declared not infringed by Crossford; and

G.      that Defendants' U.S. Patent No. 10,150,623 be declared not infringed by Crossford; and

H.      that Defendants' U.S. Patent No. 10,604,354 be declared not infringed by Crossford; and

I.      finding that Defendants misappropriated the Crossford Confidential Information in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*; and

J.      holding that Defendants' intentional acts complained herein are the direct and proximate cause of the unfair competition under the Lanham Act; and

K. holding that Defendants' intentional acts complained herein are the direct and proximate cause of the tortious interference with business relations under the common laws of the State of Connecticut and breach of contract; and

L. Defendants' intentional acts complained herein have caused and continue to cause damage to Crossford, Crossford's business reputation, and the Crossford IP, as well as the valuable goodwill associated therewith and attached thereto; and

M. finding that Defendants' illegal and illicit acts were intentional, willful, and malicious; and

N. Crossford be awarded a reasonable royalty for Defendants' misappropriation of the Crossford Confidential Information; and

O. Defendants account for and immediately pay over to Crossford profits realized by Defendants by reason of Defendants' unlawful acts herein alleged; and,

P. Defendants pay exemplary or punitive damages to Crossford due to Defendants' willful and intentional acts in violation of Crossford's rights and Defendants' false representations to and deception of the public to foster the belief that GTC is a subsidiary of Crossford; and

Q. the amount of damages be increased by a sum not exceeding three times the amount thereof as provided by law; and

R. that Crossford be awarded reasonable attorney's fees pursuant to 35 U.S.C. § 285 and/or C.G.S.A. § 42-110b, *et seq.*; and

S. that Crossford be awarded reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D) for Defendants' willful and malicious misappropriation of the Crossford Confidential Information; and

T. that Crossford have such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule 38(b), Plaintiffs Crossford International, LLC and Goodway Technologies Corporation hereby demand a jury trial on all issues so triable that are raised by this Complaint.

Dated: July 12, 2023                    Respectfully submitted,


**GILBRIDE, TUSA LAST & SPELLANE LLC**
*Attorney for Plaintiff*


By:
         Todd S. Sharinn
         1011 High Ridge Road, Suite 305
         Stamford, CT 06905
         Telephone: (203) 542-8418
         Facsimile: (203) 622-9392
         tss@gtlslaw.com